**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| DAVID HARRELL**,** individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>WEBTPA EMPLOYER SERVICES, LLC,<br><br>    Defendant. | **Case No.: 3:24-cv-01158** |
| BELINDA GULLETTE**,** individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>WEBTPA EMPLOYER SERVICES, LLC,<br><br>    Defendant. | **Case No.: 3:24-cv-01160** |
| HEAVENLE WOOD**,** individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>WEBTPA EMPLOYER SERVICES, LLC,<br><br>    Defendant. | **Case No.: 3:24-cv-01164** |

| | |
|---|---|
| JESUS RIVERA**,** individually and on behalf of all others similarly situated, | **Case No.: 3:24-cv-01172** |
|     Plaintiff, | |
| v. | |
| WEBTPA EMPLOYER SERVICES, LLC, | |
|     Defendant. | |
| RONNYE HAWKINS**,** individually and on behalf of all others similarly situated, | **Case No.: 3:24-cv-01174** |
|     Plaintiff, | |
| v. | |
| WEBTPA EMPLOYER SERVICES, LLC, | |
|     Defendant. | |
| CORY FRANCE**,** individually and on behalf of all others similarly situated, | **Case No.: 3:24-cv-01179** |
|     Plaintiff, | |
| v. | |
| WEBTPA EMPLOYER SERVICES, LLC, | |
|     Defendant. | |

4884-1857-4019, v. 1

| | |
|---|---|
| SOFIA BERSENEVA, individually and on behalf of all others similarly situated,<br><br> Plaintiff,<br><br>v.<br><br>WEBTPA EMPLOYER SERVICES, LLC,<br><br> Defendant. | **Case No.: 3:24-cv-01180** |
| AARON RADNEY, individually and on behalf of all others similarly situated,<br><br> Plaintiff,<br><br>v.<br><br>WEBTPA EMPLOYER SERVICES, LLC,<br><br> Defendant. | **Case No.: 3:24-cv-01206** |
| CONNOR MANCONE, et al. individually and on behalf of all others similarly situated,<br><br> Plaintiffs,<br><br>v.<br><br>WEBTPA EMPLOYER SERVICES, LLC,<br><br> Defendant. | **Case No.: 3:24-cv-01210** |

4884-1857-4019, v. 1

| | |
|---|---|
| KENNETH REAGAN, et al. individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>WEBTPA EMPLOYER SERVICES, LLC,<br><br>    Defendant. | **Case No.: 3:24-cv-01236** |
| JESSICA MANCANTEL, et al. individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>WEBTPA EMPLOYER SERVICES, LLC,<br><br>    Defendant. | **Case No.: 3:24-cv-01242** |
| CONRAD HELLER, et al. individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>WEBTPA EMPLOYER SERVICES, LLC,<br><br>    Defendant. | **Case No.: 3:24-cv-01235** |

4884-1857-4019, v. 1

| | |
|---|---|
| GRZEGORZ BIELIK, et al. individually and on behalf of all others similarly situated, | **Case No.: 3:24-cv-01264** |
| Plaintiffs, | |
| v. | |
| WEBTPA EMPLOYER SERVICES, LLC, | |
| Defendant. | |

### PLAINTIFFS' MOTION TO CONSOLIDATE ACTIONS, APPOINT INTERIM CLASS COUNSEL AND SET SCHEDULE

Plaintiffs in the above-captioned actions ("Plaintiffs"), individually, and on behalf of all those similarly situated, respectfully request that the Court: (1) pursuant to Federal Rule of Civil Procedure 42(a), consolidate the above-styled actions into to the first-filed *Harrell* action, as well as any other future actions filed or transferred related actions ("Related Actions") against Defendant, WebTPA Employer Services, LLC ("Defendant") under the new case style: "*In re WebTPA Employer Services, LLC Data Breach Litigation*"; (2) appoint Plaintiffs' leadership structure consisting of Jeff Ostrow and Gary M. Klinger as Interim Co-Lead Counsel ("Proposed Interim Co-Lead Counsel"), Joe Kendall as Interim Texas Local Counsel ("Proposed Texas Local Counsel"), and one attorney from each action to Plaintiffs' Interim Executive Committee ("Proposed PEC") (collectively "Proposed Interim Class Counsel"); (3) stay the related actions, including any of the Defendant's responsive pleading deadlines, and require the filing of a consolidated class action complaint ("Consolidated Complaint") within 60 days of entry of an order consolidating the cases and appointing leadership; and (4) set the deadline for Defendant's response to the Consolidated Complaint 60 days after the Consolidated Complaint is filed, set the

deadline of 30 days thereafter for Plaintiffs' response thereto, followed by 15 days thereafter for the Defendant's reply.

As discussed below, consolidation is proper because each action: (i) is brought against the same Defendant; (ii) is based on the same data incident announced by the Defendant on or about May 8, 2024 ("Data Incident"); (iii) asserts the same or overlapping allegations and claims for relief; and (iv) seeks to represent the same or overlapping putative classes. Given the common factual background and claims asserted in each action, consolidation will streamline litigation and preserve judicial and party resources.

Prior to the filing of this Motion, counsel for Plaintiffs in the Related Actions conferred with counsel for Defendant who indicated that Defendant does not oppose consolidation, takes no position as to the requested appointment of Plaintiffs' Proposed Interim Class Counsel, and agrees to the Plaintiffs' proposed filing and briefing schedule.

## I.    INTRODUCTION

Plaintiff, David Harrell, filed his Class Action Complaint on May 15, 2024, seeking to hold Defendant liable for its disclosure of personally identifiable information ("PII") and protected health information ("PHI") (PII and PHI collectively "Private Information") belonging to Plaintiff and 2,429,175 other individuals affected by the Data Incident. Subsequent to the filing of *Harrell*, there are now 12 Related Actions in this Court, each arising from the same Data Incident and operative facts and asserting substantially identical claims on behalf of overlapping putative classes, thus making consolidation into the first-filed case with the lowest case number appropriate.

## II.    COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND

### A.    The Data Incident

Defendant is a third-party administrator that provides custom health plans for self-funded employer groups, hospital health plans, and administrative outsourcing services. *See* Harrell Compl., ECF No. 1, at ¶ 3. Plaintiffs in this action allege that Defendant collected and inadequately maintained their and the putative class members' Private Information, resulting in the Data Incident. *Id.*, ¶ 2. In the Notice of Data Security Incident published on Defendant's website, Defendant advised that Plaintiffs' and putative class members' Private Information was compromised in the Data Incident, including their names, dates of birth, dates of death, Social Security numbers, and health insurance information. The Related Actions seek to remedy Defendant's failures and the consequences therefrom. Plaintiffs in the above captioned cases filed their complaints as putative class actions on behalf of themselves and all others whose PII and/or PHI was exposed during the Data Incident.

### B.    Consolidation of the Related Actions

The Related Actions before this Court are substantially the same and consolidation is appropriate. Each lawsuit arises from the same common set of alleged operative facts: the Data Incident. Due to each Plaintiffs' reliance on the same set of alleged operative facts, all Plaintiffs assert overlapping claims, on behalf of similarly defined classes, seeking similar relief. The Related Actions, the parties thereto, and the Court will be best served in a consolidated proceeding, which will preserve party and judicial resources.

### III.    ARGUMENT AND AUTHORITIES

### A.    Legal Standard for Consolidation

Federal Rule of Civil Procedure 42(a) provides:

If actions before the court involve a common question of law *or* fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

(emphasis added).  "Rule 42(a) provides district courts with broad authority to consolidate actions that 'involve a common question of law or fact.'" *Luera v. M/V Alberta*, 635 F.3d 181, 194 (5th Cir. 2011) (quoting Fed. R. Civ. P. 42(a)); *see also In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977) ("The trial court's managerial power is especially strong and flexible in matters of consolidation.").

"The purpose of consolidation is to permit trial convenience and economy in administration." *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d at 1014 (citation omitted). Accordingly, "district judges have been urged to make good use of Rule 42(a) in order to expedite the trial and eliminate unnecessary repetition and confusion." *Id.* at 1013 (citation, quotations, and alterations omitted); *see also St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983) ("Consolidating actions in a district court is proper when the cases involve common questions of law and fact, and the district judge finds that it would avoid unnecessary costs or delay.").

The following factors are pertinent to the decision of whether to consolidate actions:

> (1) whether the actions are pending before the same court; (2) whether the actions involve a common party; (3) any risk of prejudice or confusion from consolidation; (4) the risk of inconsistent adjudications of common factual or legal questions if the matters are tried separately; (5) whether consolidation will reduce the time and cost of trying the cases separately; and (6) whether the cases are at the same stage of preparation for trial.

*Bayati v. GWG Holdings, Inc.*, No. 3:22-CV-0410-B, 2023 WL 5925880, at *2 (N.D. Tex. Sept. 12, 2023).

### B.  The Related Actions Should be Consolidated with *Harrell*.

Each Related Action involves common questions of law and fact, and all relevant factors weigh in favor of consolidation, which will promote efficiency and uniformity without prejudicing

any party.  The Court should therefore consolidate all Related Actions with this first-filed case.

All Related Actions involve common factual and legal questions as they arise from the same occurrence: the Data Incident. Courts have recognized that consolidation is appropriate where multiple actions arise from the same data breach event.  *See, e.g.*, *Lockhart v. El Centro Del Barrio*, No. SA-23-CV-01156-JKP, 2024 WL 303253, at *2 (W.D. Tex. Jan. 25, 2024) (finding consolidation appropriate because "Plaintiffs are all patients of Defendant asserting causes of action based on the same data breach resulting from the same cyberattack"); *Kaplan v. 21st Century Oncology Holdings*, No. 2:16-cv-210, 2016 WL 9383330, at *2 (M.D. Fla. July 21, 2016) ("it is clear that common questions of law and fact permeate these cases [because] . . . all of the cases appear to arise from the same alleged" data privacy incident).

Because all Related Actions are filed in this District, the first factor guiding the Court's analysis weighs in favor of consolidation.  *See U.S. ex rel Frey v. Health Mgmt. Sys., Inc.*, No. 3:19-cv-1141-B, 2021 WL 9145414, at *2 (N.D. Tex. Mar. 15, 2021) (first factor satisfied when "the cases are pending in the same court"); *Zolezzi v. Celadon Trucking Servs., Inc*., No. CIV.A.H-08-3508, 2009 WL 736057, at *1 (S.D. Tex. Mar. 16, 2009) (first factor satisfied where both actions filed in same district and division).

The second factor is likewise satisfied because all Related Actions are against Defendant and seek to certify national classes of similarly situated individuals whose Private Information was compromised in the Data Incident.  *See Lockhart*, 2024 WL 303253, at *2 (fact that all cases filed on behalf of same class of data breach victims against same defendant supports consolidation); *Bayati*, 2023 WL 5925880, at *2 (consolidating actions filed on behalf of same proposed class against same defendant); *Arnold & Co., LLC v. David K. Young Consulting, LLC*, No. SA-13-CV-00146-DAE, 2013 WL 1411773, at *2 (W.D. Tex. Apr. 8, 2013) (ordering consolidation where

"[b]oth cases involve essentially the same parties").

The third and fourth factors favor consolidation as well. On one hand, trying the Related Actions separately would risk inconsistent findings and rulings in each case arising from the same Data Incident, brought on behalf of the same putative class of individuals affected, against the same Defendant. *See Lockhart*, 2024 WL 303253, at *2 (finding that "[c]onsolidation will ensure consistent rulings and promote judicial economy" where three cases asserted "causes of action based on the same data breach resulting from the same cyberattack"); *JFP Servs., L.L.C. v. Torans*, No. SA-17-CV-00210-FB, 2017 WL 9362704, at *2 (W.D. Tex. Dec. 21, 2017) ("In light of these common questions of law and fact, the Court finds there is a risk of inconsistent adjudication if the Court were to allow these cases to be tried separately before different judges[.]"). On the other hand, "[a]ny prejudice to the parties flowing from the consolidation would be minimal in comparison to these considerations." *Id.*; *see also Stoneeagle Servs., Inc. v. Gillman*, No. 3:11-CV-02408-P, 2014 WL 12577069, at *3 (N.D. Tex. Jan. 28, 2014) ("Given the substantial similarities among the facts and causes of action, the prospect of confusion incumbent on the fact finder will be nominal at best because these cases tell the same story[.]"); *Zolezzi*, 2009 WL 736057, at *2 ("[T]he court finds that the risk of prejudice or confusion if the cases are consolidated is minimal. This risk is, therefore, outweighed by the risk of inconsistent judgments should the cases be tried separately.").

Regarding the fifth factor, consolidating the Related Actions will certainly reduce the time and costs for all involved by eliminating the need for separate filings, discovery, settlement negotiations, hearings, and trials for the 13 cases arising from the same Data Breach, involving the same Defendant and putative classes, and presenting the same factual and legal issues. This factor thus weighs in favor of consolidation. *See Bayati*, 2023 WL 5925880, at *2 (where two actions

"make nearly identical legal claims based on the same set of facts," and were "filed on behalf of the same proposed class," consolidation "would therefore promote judicial efficiency"); *Gate Guard Servs. L.P. v. Solis*, No. CIV.A. V-10-91, 2011 WL 2784447, at *15 (S.D. Tex. July 12, 2011) (ordering consolidation where "the same factual and legal issues exist in both cases and consolidating the actions would be more efficient than litigating the two cases separately").

Finally, because all Related Actions are at the same early procedural stage—complaints are filed, but there have been no responsive pleadings, and no scheduling orders have been entered—the sixth factor weighs in favor of consolidation. *See Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-CV-1040-B, 2023 WL 4108845, at *2 (N.D. Tex. June 20, 2023) (granting consolidation where cases at the same pre-trial stage); *Arnold & Co.*, 2013 WL 1411773, at *2 (ordering consolidation where "the cases were filed less than one month apart, no dispositive motions have been filed in either case, and very little discovery has occurred"); *Gabriel v. OneWest Bank FSB*, No. CIV.A. H-11-3356, 2012 WL 1158732, at *1 (S.D. Tex. Apr. 5, 2012) (ordering consolidation where "[n]either case has been set on schedule yet, so the litigation is at the same stage in both"); *Zolezzi*, 2009 WL 736057, at *2 (ordering consolidation where "both actions are at the early stages of litigation").

Accordingly, because all factors weigh in favor of consolidation, consolidating the Related Actions "is not only appropriate, but would promote this Court's judicial efficiency and economy and would tend to avoid unnecessary costs or delay." *Mayfield*, 2003 WL 21250935, at *2. The Court should therefore consolidate the Related Actions into this first-filed case.

### C.  Legal Standard for Appointment of Interim Class Counsel.

Rule 23(g)(3) explicitly permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P.

11

23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation ("MCL") § 21.11 (4th ed. 2004).

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Fed. R. Civ. P. 23(g)(1)(A). *See Kjessler v. Zaappaaz, Inc.*, No. 4:17-CV-3064, 2018 WL 8755737, at *3 (S.D. Tex. Aug. 31, 2018) (citing *Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008).) Under the rule, a court appointing class counsel must evaluate whether the proposed counsel will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(2), (4). In doing so, a court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A), (2). A court, in its discretion, also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

### i.    Appointment of Interim Class Counsel is Appropriate

Proposed Interim Class Counsel satisfy all the requirements for appointment by the Court under Fed. R. Civ. P. 23(g)(3). The attorneys and their firms have successfully litigated numerous class actions involving privacy claims on behalf of tens of millions of consumers. Proposed Interim Class Counsel possess the necessary resources to prosecute this litigation, have the support of the Plaintiffs from each of the cases on file, are working together collectively already, and will

continue to work in this fashion to manage this litigation effectively and efficiently. Because Proposed Interim Class Counsel have the case-management and complex-litigation skills, experience, knowledge of the relevant facts and legal issues, support of all Plaintiffs and their counsel from the Related Actions, and the extensive resources needed to efficiently prosecute this action on behalf of putative class members, the Court should grant Plaintiffs' motion. Proposed Interim Class Counsel work, experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrate that they are superbly qualified to represent the Proposed Class's interests under the factors enumerated in Fed. R. Civ. P. 23.

### a. Proposed Interim Class Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date.

One factor courts consider is the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV. 13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of claims"); *In re IndyMac ERISA Litig.*, No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same).

Here, immediately after the public announcement of the Data Incident, Proposed Interim Class Counsel began investigating potential legal claims and remedies for the victims of the breach. Those investigations included, among other things:

- Investigating the facts surrounding the Data Incident;

- Interviewing numerous consumers injured by the Data Incident;

- Researching legal claims;

- Consulting with potential liability and damage experts;

- Drafting initial pleadings; and

- Organizing Plaintiffs and their counsel and discussing consolidating the relevant actions for unified proceedings and preparing the consolidation and proposed leadership papers.

The facts alleged by Plaintiffs in the Related Actions are egregious in terms of the impact to individual consumers and the consumer marketplace as a whole. Given the scope of the Data Incident and the number of victims potentially affected, Proposed Interim Class Counsel worked to quickly organize and avoid any delay that could result from a leadership dispute to address the merits of the case as expeditiously as possible. Moreover, in the spirit of their prior and positive working relationship, assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity.

Proposed Interim Class Counsel will continue to operate as a cohesive, well-organized group. Going forward, and if appointed, Proposed Interim Class Counsel will establish a standardized protocol for managing and reporting time and expenses incurred to prosecute the case as efficiently as possible. *See, e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624, 2015 WL 10890657, at *1 (N.D. Cal. July 27, 2015) (noting that the establishment of a "reasonable, fair, and transparent" billing protocol is an important factor in selecting interim class counsel).

Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Class Counsel under Fed. R. Civ. P. 23(g)(3), as Proposed Interim Class Counsel are organized, unified, and committed to working together for the best interests of the class. *Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation).

### b. Proposed Leadership Counsel Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation.

14

A primary factor in selecting interim counsel is their experience, skill, knowledge, and familiarity with the relevant law. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, No. 22-CV-03580-WHO, 2022 WL 18399978, at *2 (N.D. Cal. Dec. 21, 2022). Proposed Interim Class Counsel have the experience and skill to prosecute this action efficiently and effectively. As set forth below, their résumés include extensive experience leading complex class actions, including data breach cases on behalf of millions of consumers. They will formulate and present positions on substantive and procedural issues during the litigation. *See* Manual for Complex Litigation § 10.221 ("Typically [lead counsel] act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met."). Courts have found that proposed leadership counsel's experience and service as lead counsel in prior cases is particularly persuasive. *See, e.g.*, *In re Lenovo Adware Litig.*, 2015 WL 10890657, at *2 (finding class-action and complex litigation leadership experience relevant for appointment).

As demonstrated below, Proposed Interim Class Counsel each have substantial data breach class-action experience, resources, and knowledge that will undoubtedly benefit the putative class as this litigation proceeds.

<u>**Proposed Interim Co-Lead Counsel**</u>

***Jeff Ostrow of Kopelowitz Ostrow P.A.***

Jeff Ostrow is the Managing Partner of Kopelowitz Ostrow P.A. and has been practicing law for 27 years. Mr. Ostrow established the South Florida-based firm immediately following his graduation from Nova Southeastern University in 1997 and has since grown it to 30 attorneys.

15

Beyond managing the firm, Mr. Ostrow heads the class action department and maintains a full caseload of nationwide class actions. Although Mr. Ostrow currently only represents class plaintiffs, he has prior experience defending large companies in class actions, including banks, commercial lenders, and tech companies, which affords him a valuable perspective and advantage in litigation and settlement.

Mr. Ostrow is currently counsel of record in approximately 150 data breach cases. He has been appointed lead counsel in many of them. Three notably large cases in which he is presently part of the leadership structure, include: *Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.), an MDL involving six million individuals, where he is MDL Co-Lead Counsel*; Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting eight million people, where he is Co-Lead Counsel; and *In re HCA Healthcare Data Security Litigation*, No. 3:23-cv-00684 (M.D. Tenn.), affecting 11 million people, where he is on the Plaintiffs' Executive Committee.  In addition to litigating cases, Mr. Ostrow has substantial experience settling them. In the past year alone, he has resolved over a dozen data breach cases.

For the past 13 years, Mr. Ostrow's firm has served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK (S.D. Fla.), a large MDL that resulted in the recovery of $1.2 billion from the nation's largest banks, and is Liaison Counsel in *In re Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date. Moreover, Kopelowitz Ostrow P.A. is co-counsel for Broward County and the City of Fort Lauderdale in *In re: National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio), and for the Broward and Miami-Dade County School Boards in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.) helping our clients recover $100 million and $26 million, respectively.

Federal judges have recognized Mr. Ostrow's commitment to excellence. In *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), in which Mr. Ostrow served as lead counsel on behalf of millions of people, U.S. District Judge James Lorenz made the following observation when granting final approval of our settlement that included a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to stop an enormously lucrative practice:

> Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

Similarly, when approving a $13 million settlement in which Mr. Ostrow was one of the lead counsel, U.S. District Judge James Lawrence King commented that "Class Counsel's efforts in pursing and settling these consumer claims were, quite simply, outstanding." *In re Checking Account Overdraft Litig.*, 1:09-md-02036-JLK, 2013 WL 11319244, *16 (S.D. Fla. Aug. 2, 2013). In another recent case in which Mr. Ostrow was lead counsel, U.S. District Judge Jose Martinez noted, "Here, Class Counsel worked extensively and with a high level of skill to advance Plaintiff's claims . . . The case involved difficult factual and legal issues from a global pandemic. . . . Despite the strong defenses presented by Barry [University], Class Counsel obtained an excellent result for the Settlement Class Members." *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.), Dkt. 84 at 14. A full copy of Mr. Ostrow's resume is attached as ***Exhibit A***.

### Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC

Mr. Klinger is a Partner at Milberg and Chair of its Cybersecurity and Data Privacy Practice Group. Mr. Klinger is recognized as one of the most respected data privacy attorneys in the United States, having been selected to Lawdragon's 500 Leading

Litigators in America for his accomplishments in privacy litigation.[1] He has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g., In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Mr. Klinger was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers); *Isaiah v. LoanDepot, Inc.*, 8:24-cv-00136-DOC-JCE (C.D. Cal) (where Mr. Klinger was appointed co-lead counsel in a data breach that impacted 17 million consumers).[2] Mr. Klinger and his firm have played an important role in developing the favorable case law that many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *In re Blackbaud, Inc., Customer Data Breach Litig.,* No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

---

[1]    *See*    https://www.lawdragon.com/guides/2023-09-08-the-2024-lawdragon-500-leading-litigators-in-america.

[2] *See, also Morrill v. Lakeview Loan Servicing, LLC*, Case No. 1:22-cv-20955-DPG (S.D. Fla.) (where Mr. Klinger is appointed to the leadership committee in a data breach class action involving 6 million consumers); *Sherwood v. Horizon Actuarial Services, LLC*, Case No. 1:22-cv-01495-ELR (N.D. Ga.) (where Mr. Klinger is court-appointed co-lead counsel in a data breach class action involving 4 million consumers).

Over the past three years, Mr. Klinger has settled on a classwide basis more than 50 class actions involving privacy violations, the majority of which are data breaches, in State and federal courts across the country as lead or co-lead counsel.[3] To his knowledge, no other attorney in the country has settled and won court approval of more data breach class actions during this time period. Representative cases include:

- *Parris, et al., v. Meta Platforms, Inc.*, Case No.2023LA000672 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $64.5 million for 4 million consumers in a privacy class action);
- *Boone v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $35 million for 3 million consumers in a privacy class action);
- *Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where Mr. Klinger served as lead counsel in a data breach class action involving 6 million consumers and reached a settlement valued at $17 million); and
- *In re: East Palestine Train Derailment*, No. 23-cv-00242 (N.D. Ohio) (where Mr. Klinger serves on the leadership team that obtained a settlement of $600 million in a complex class action).

In addition to his professional experience, Mr. Klinger is a Certified Information Privacy Professional (CIPP/US).

Mr. Klinger also has the full weight of his law firm behind him. Since its founding in 1965, Milberg has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[4] Milberg has been instrumental in

---

[3] Mr. Klinger has also successfully litigated privacy class actions through class certification. *See Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. 2018) (where Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members; the case ultimately settled for $6.5 million).
[4] *See, e.g.*, *In re Tyco Int'l Ltd., Sec. Litig.*, MDL 1335 (D.N.H.) (serving as lead counsel and

obtaining precedent setting decisions at every level, including at the United States Supreme Court.[5] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of large-scale wrongdoing. Milberg has been described by the New York Times as "[a] powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."[6]

Milberg is one of the largest plaintiffs' class action firms in the United States (and abroad). The firm currently is involved in some of the largest and well-known class action cases in the country and is particularly active in the field of data breach and privacy litigation. The firm is comprised of more than one hundred-twenty attorneys who work from offices across the United States and in Portugal, the United Kingdom, the Netherlands, and Germany. Milberg attorneys come from diverse backgrounds and reflect the diversity of the bar and the classes they seek to represent—from the standpoint of age, gender, experience, and geographic location.[7] Mr. Klinger's resume is attached as ***Exhibit B***.

---

obtaining approval of $3.2 billion settlement); *In re Prudential Ins. Co. Sales Practice Litig.*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.

[5] *See* https://milberg.com/precedent-setting-decisions/page/3/.

[6] Sam Roberts, *Melvyn Weiss, Lawyer Who Fought Corporate Fraud, Dies at 82*, N.Y. TIMES, (Feb. 5, 2018), https://www.nytimes.com/2018/02/05/obituaries/melvyn-weiss-lawyer-who-fought-corporate-fraud-dies-at-82.html.

[7] *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("Duke Guidelines") ("The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds.").

**Proposed Texas Local Counsel and Proposed Executive Committee**

The Proposed Texas Local Counsel is an extremely well respected member of the Texas Bar having practiced for decades in this district. He is well versed in class actions, local rules, and procedure. He has previously served, and currently serves as class counsel in many pending data breach cases in Texas federal courts and is familiar with litigating privacy cases. The PEC is comprised of attorneys who, similar to Proposed Interim Co-Lead Counsel and Proposed Texas Local Counsel, have substantial data breach experience. Each has served as lead counsel in many class action cases throughout the country in federal and state courts and are more than qualified for the proposed appointment here. Proposed Co-Lead Counsel will oversee the PEC, which will be made up of one lawyer from each case other than *Harrell* and *Rivera*, which are represented by Proposed Co-Lead Counsel.

> ### c.   Proposed Interim Class Counsel Have and Will Continue to Devote Sufficient Resources to this Case.

The resources that Proposed Interim Class Counsel have already committed and will continue to commit to the case also strongly supports the appointment of Proposed Interim Class Counsel. As demonstrated above, Proposed Interim Class Counsel and their firms' resources are not merely financial, but also include substantial expertise and work-product developed in other similar cases, which will benefit Plaintiffs and the putative class. Proposed Interim Class Counsel's ability to draw from this well-developed repository of information will also allow them to streamline the litigation.

Each attorney understands the time, energy, and skill necessary to lead this litigation, and all have committed the resources required to ensure the effective and efficient representation of

the putative class. Proposed Interim Class Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. In fact, Proposed Interim Class Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to it and coordinating among themselves to file this leadership proposal and to consolidate the Related Actions. And, as their firm résumés and counsels' experience indicate, Proposed Interim Class Counsel have the resources and capacity to see this litigation through to its conclusion, including trial.

If appointed as interim counsel, Proposed Interim Class Counsel will continue to commit the same resources and effort to this case as they have committed to other successful class action litigations and are equally committed to working cooperatively and efficiently for the benefit of the putative class.

### d. Additional Factors Supporting Formal Designation of Proposed Interim Class Counsel.

Plaintiffs and their counsels' support for the proposed leadership structure also weighs in favor of appointing the Proposed Interim Class Counsel. Notably, the proposed leadership structure has the support of all the Plaintiffs and the law firms involved in the litigation. *See I*n re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at \*5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at \*2 (S.D. Ohio Dec. 17, 2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at \*2 (S.D. Ohio June 14, 2011) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel.")); *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 U.S. Dist. LEXIS 164895, at \*10 (N.D. Ill. May 30, 2020) ("And all Plaintiffs in this action have consented to the proposed leadership

structure."); Manual for Complex Litigation §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Indeed, after their cases were filed, Proposed Interim Class Counsel moved quickly to coordinate the proposed leadership structure to avoid any delay attendant with potential multi-district litigation proceedings due to the egregious nature of Defendant's unlawful conduct. Proposed Interim Class Counsel seek this leadership structure to best serve the interests of the classes in the most efficient manner possible.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to the successful management of the litigation. *See* Manual for Complex Litigation § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id*. Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge to form an alliance against often well-financed opponents, as is the case here. This process has the potential for disorganization, in-fighting, and inefficiencies. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." Duke Guidelines, *supra*, at 43. Selecting lawyers who have previously worked together has many benefits. They have developed working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id*. Nowhere could these sentiments be

more accurate than among the counsel proposed for Proposed Interim Class Counsel. In other words, Proposed Interim Class Counsel are well suited to jointly prosecute this action because they are able to work cooperatively and inclusively with themselves and other counsel.

Importantly, Proposed Interim Class Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. They each understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party litigation funding to do so.

While Proposed Interim Class Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. Accordingly, they have already discussed how best to organize to effectively use their members' diverse skills and unique experiences for the efficient prosecution and management of this litigation while avoiding unnecessary and duplicative billing.

Finally, this Court should appoint Proposed Interim Class Counsel because their team filed the first action against Defendant. *See Shane White v. Medical Review Institute of America, LLC*, Case No.: 2:22-cv-00082-DBP. It is well-established that courts across the country give deference to counsel in the first-filed cases where, as here, they are more than qualified to handle the action. *See In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (appointing as interim lead counsel the firms that filed the first complaints and holding that where a firm has "filed the first complaint[] in [the] case, and the subsequent complaints filed . . . are substantially similar to those initial filings," it provides evidence of the firm's "substantial history of investigating the potential claims in this action."); *see also In re Insulin Pricing Litig.*, 2017 WL 4122437, at *3 (D.N.J. Sept. 18, 2017) (appointing class counsel in part because they "filed the first complaint in this litigation"); *Steele v. United States*, 2015 WL 4121607, at *4 (D.D.C. June

30, 2015) ("[S]ince both groups are more than qualified to handle this action, it would be imminently reasonable to select the Motley Rice Group on the basis that their complaint was filed first."); *Michelle v. Arctic Zero, Inc*., 2013 WL 791145, at *2 n.3 (S.D. Cal. Mar. 1, 2013) ("[F]irst-to file can be a relevant factor when the factors for class counsel do not tilt heavily in either direction and there is a need for an objective tie-breaker."); *Richey v. Ells*, 2013 WL 179234, at *2 (D. Colo. Jan. 17, 2013) ("Ultimately, Plaintiff Richey was the first to file his case and, therefore, the Court appoints his counsel as Lead Counsel for the consolidated action."); *Carlin v. Dairy America, Inc*., 2009 WL 1518058, at *2 (E.D. Cal. May 29, 2009) (where multiple counsel filing two identical class action lawsuits seek appointment of interim class counsel, appointment of the first-filed counsel is appropriate where "a simple comparison of the original complaint . . . with the [second-filed complaint] reveals that they are almost identical"); *Moradi v. Adelson*, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) ("Moreover, as the Moradi Plaintiffs were the first to file suit, it would be appropriate to assign [their attorneys] as lead counsel."); *Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) (noting that courts will consider which action was filed first for lead counsel purposes where "there is a need for an objective tie-breaker").

## IV.    **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request the Court grant this Motion and enter an order: (1) consolidating the Related Actions and future actions into the first filed action, under the new case style: "*In re WebTPA Employer Services, LLC Data Breach Litigation*"; (2) appointing Jeff Ostrow and Gary M. Klinger as Interim Co-Lead Counsel; (3) appointing Joe Kendall as Interim Texas Local Counsel; (4) appointing Bruce Steckler, Andrew Shamis, Raina Borrelli, Gerard Stranch, Joe Lyons, William B. Federman, Gary Lynch, James Pizzirusso, Jillian Dent, Kevin Laukaitis, and Courtney Maccarone to the Interim PEC; (5) staying the related actions,

including the Defendant's responsive pleading deadlines, and setting a deadline for the filing of a single Consolidated Complaint 45 days after the court's order consolidating the cases and appointing leadership; and (6) setting the deadline for Defendant's response to the Consolidated Complaint 45 days thereafter, setting a deadline 30 days thereafter for Plaintiffs' response, followed by 15 days thereafter for Defendant's reply.

/s/Jeff Ostrow
Jeff Ostrow (*pro hac vice*)
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas. Blvd., Ste. 500
Fort Lauderdale, FL 33301
Telephone: (954) 332-4200
ostrow@kolawyers.com

Gary Klinger (*pro hac vice* forthcoming)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

*Counsel for Plaintiffs Harrell and Rivera and Proposed Co-Lead Counsel*

## LOCAL RULE 7.1 CERTIFICATION

Undersigned counsel certifies that on May 23, 2024, counsel for Plaintiff, David Harrell, conferred with counsel for Plaintiffs and Defendant in the Related Actions. All Plaintiffs' counsel agree to the relief requested herein and Counsel for Defendant does not oppose consolidation, takes not position on the appointment of leadership, and agrees to the proposed filing and briefing schedule.

Dated: May 30, 2024.                               Respectfully Submitted,

/s/ Jeff Ostrow
Jeff Ostrow (*pro hac vice*)
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas. Blvd., Ste. 500
Fort Lauderdale, FL 33301
Telephone: (954) 332-4200
ostrow@kolawyers.com

*Counsel for Plaintiffs Harrell and Proposed Co-Lead Counsel*

## LOCAL RULE 42.1 CERTIFICATION

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon all counsel of record for each party in the above-captioned actions sought to be consolidated and Defendants Counsel via electronic mail on this 30th day of May, 2024.

/s/ Jeff Ostrow

4884-1857-4019, v. 1