# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| DAVID HARRELL, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | |
| v. | Civil Action No.: 3:24-cv-01158-L |
| WEBTPA EMPLOYER SERVICES, LLC; HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY; ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; and ELEVANCE HEALTH, INC., | Consolidated Action |
| Defendants. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND AND PROCEDURAL HISTORY ..........................................2

III.  SUMMARY OF SETTLEMENT ......................................................................4

      A.  Settlement Class and California Settlement Subclass ..................................4

      B.  Settlement Consideration ............................................................................4

            1.  Cash Payments .....................................................................................5

                  a.  Cash Payment A – Documented Losses ....................................5

                  b.  Cash Payment B – Flat Cash Payment ......................................5

                  c.  California Statutory Payment ....................................................6

            2.  Medical Monitoring ..............................................................................6

            3.  Pro Rata Adjustments on Cash Payments ..............................................6

            4.  Business Practice Changes ....................................................................6

            5.  Releases ...............................................................................................6

            6.  The Notice Program, Claim Process, Opt-Outs, and Objections ............7

            7.  Service Awards, Attorneys' Fees, and Costs ..........................................8

            8.  Funds Remaining After Distribution ......................................................8

IV.   LEGAL AUTHORITY ........................................................................................9

V.    LEGAL DISCUSSION ......................................................................................10

      A.  The Court Should Certify the Proposed Class for Settlement Purposes ....10

      B.  The Settlement Terms are Fair, Adequate, and Reasonable .......................13

            1.  Class Representatives and Counsel have Adequately Represented the Class.
                (Fed. R. Civ. P. 23(e)(2)(A)) ...............................................................15

2. The Settlement is the product of good-faith arm's-length negotiations and is absent of any collusion. (Fed. R. Civ. P. 23(e)(2)(B))............................................16

3. The Settlement Agreement provides substantial relief to the Settlement Class, in light of the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C))................................................................................................16

4. The proposed Settlement treats Settlement Class Members equitably. (Fed. R. Civ. P. 23(e)(2)(D))..................................................................18

5. The remaining "Reed" Factors also weigh in favor of Preliminary Approval ......18

C. The Proposed Settlement Administrator will Provide Adequate Notice ....................19

VI. PROPOSED SCHEDULE OF EVENTS AND CONCLUSION .....................................20

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                          **<u>Page(s)</u>**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
   No. H-17-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019) .................................................. 14

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................................. 10

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir. 2004) ................................................................................................... 18

*Burnett v. CallCore Media, Inc.*,
   No. 4:21-cv-03176, 2024 WL 3166453 (S.D. Tex. June 25, 2024) .......................................... 20

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ........................................................................................ 9, 14, 19

*Dehoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. Feb. 21, 2007) .............................................................................. 10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   No. 02-CV-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ................................... 9, 17

*Feder v. Elec. Data. Sys. Corp.*,
   429 F.3d 125 (5th Cir. 2005) ............................................................................................. 12, 15

*Hapka v. CareCentrix, Inc.*,
   No. 2:16-cv-02372-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) .................................. 13

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ............................................................................................ 13

*In re Beef Indus. Antitrust Litig.*,
   607 F.2d 167 (5th Cir. 1979) ..................................................................................................... 9

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
   No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) .................................... 18

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) ................................................................................................... 11

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ......................................................................... 9, 11, 13

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
   310 F.R.D. 300 (E.D. La. 2015) ........................................................................... 9

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   309 F.R.D. 482 (D. Minn. 2015) ........................................................................ 10

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   No. 14-2522, 2015 WL 7253765 (D. Minn. Nov. 17, 2015)..................................... 17

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) .............................. 13

*Jenkins v. Raymark Indus., Inc.*,
   782 F.2d 468 (5th Cir. 1986) ........................................................................... 13

*Kincade v. Gen. Tire & Rubber Co.*,
   635 F.2d 501 (5th Cir. 1981) ........................................................................... 9

*Kostka v. Dickey's Barbecue Restaurants, Inc.*,
   No. 3:20-CV-03424-K, 2022 WL 16821685 (N.D. Tex. 2022), *report and
   recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022)............. 10, 12, 16, 17

*Logan v. Marker Group, Inc.*,
   4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024)............................... 18

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ........................................................................... 19

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) ........................................................................... 11

*O'Donnell v. Harris Cnty.*,
   No. H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ........................................... 9, 16

*O'Donnell v. Harris Cnty.*,
   No. H-16-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019)............................... 14

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) ........................................................................... 9

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ...................................................................*Passim*

*Stirman v. Exxon Corp.*,
   280 F.3d 554 (5th Cir. 2002) ........................................................................... 12

*Vaughn v. Am., Honda Motor Co.,*
   627 F. Supp. 2d 738 (E.D. Tex. 2007)................................................................ 16

*Wal-Mart Stores v. Dukes,*
   564 U.S. 338 (2011) ........................................................................................... 11

*Welsh v. Navy Federal Credit Union,*
   No. 5:16–CV–1062–DAE, 2018 WL 7283639 (S.D. Tex. 2018) ........................... 11

## **Rules**

Fed. R. Civ. P. 5(b) .................................................................................................. 22

Fed. R. Civ. P. 23 .............................................................................................. 14, 17

Fed. R. Civ. P. 23(a) ............................................................................ 1, 10, 13, 15, 21

Fed. R. Civ. P. 23(a)(1) ............................................................................................ 11

Fed. R. Civ. P. 23(a)(2) ............................................................................................ 11

Fed. R. Civ. P. 23(b)(3)............................................................................ 10, 13, 19, 21

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 19

Fed. R. Civ. P. 23(e) ............................................................................................ 8, 14

Fed. R. Civ. P. 23(e)(1) ............................................................................................ 19

Fed. R. Civ. P. 23(e)(2) ............................................................................... 10, 13, 14

Fed. R. Civ. P. 23(e)(2)(A) ....................................................................................... 15

Fed. R. Civ. P. 23(e)(2)(B) ....................................................................................... 16

Fed. R. Civ. P. 23(e)(2)(C) ....................................................................................... 16

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................................... 18

Fed. R. Civ. P. 30(b)(6)............................................................................................... 3

## **Other Authorities**

2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018) ......................................... 15, 16

2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992) ........................... 9

2 Newberg & Conte, *Newberg on Class Actions* §§ 11.25 (3d ed. 1992) .................................. 10

*Manual for Complex Litigation* § 30.44 (4th ed.)................................................................ 9, 19

Plaintiffs[1], individually and on behalf of others similarly situated, respectfully move pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (e) to certify the Settlement Class, preliminarily approve the proposed class action Settlement, and approve the Notices, Notice Program, Claim Form, and Claims process.

## I.    INTRODUCTION

On March 25, 2024, Defendant WebTPA communicated to its customers that an unauthorized party had infiltrated its computer network and potentially accessed Private Information of certain individuals around and/or between April 18, 2023 and April 23, 2023. See Joint Declaration of Class Counsel ("Joint Decl.") ¶ 5, attached as ***Exhibit B***. The Private Information may have included a combination of names, telephone numbers, physical addresses, dates of birth, dates of death, insurance identifier information, and some Social Security numbers, of approximately 3,000,000 individuals. *Id.* As a result of the Data Incident, this Action was initiated in connection with Defendants' alleged failure to safeguard the Private Information it maintained on behalf of the Settlement Class. *Id.* ¶ 7. Defendants deny all liability and wrongdoing. *Id.* ¶ 11.

After extensive arm's-length negotiations and with the assistance of an independent third-party mediator, the Parties reached a Settlement that is fair, adequate, and reasonable. *Id.* ¶ 22. The Settlement's $13,750,000.00 all-cash, non-reversionary common Settlement Fund will be used to pay: (1) all Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any Court-awarded Service Awards; and (4) any Court-awarded attorneys' fees and costs. Agreement ¶ 72. All Settlement Class members may elect one of two types of Cash Payments and

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached here as ***Exhibit A***.

Medical Monitoring. *Id.* ¶ 76d.  California Settlement Subclass members may also elect a California Statutory Payment. *Id.* ¶ 76c.  Additionally, Defendants have agreed to valuable injunctive relief. *Id.* ¶ 78. Plaintiffs and Class Counsel submit the Settlement is an excellent result for the Settlement Class. *Id.*

## II.    BACKGROUND AND PROCEDURAL HISTORY

WebTPA is a third-party administrator that provides custom health plans for self-funded employer groups, hospital health plans[2], and administrative outsourcing services. Joint Decl. ¶ 2. In the course of operating its business, WebTPA collects, maintains, and stores Private Information of individuals who maintain health insurance plans with WebTPA's business associates. *Id.* ¶ 3.

In mid-April of 2023, cybercriminals infiltrated WebTPA's computer network. *Id.* ¶ 4. WebTPA discovered the unauthorized access at the end of December 2023. *Id.* Following a thorough investigation into how the Data Incident happened and what information was involved, on May 8, 2024, Defendants began sending notice letters to potentially impacted customers advising that their Private Information may have been involved in the Data Incident. *Id.* ¶ 6.

Thereafter, commencing on May 15, 2024, with the filing of Plaintiff David Harrell's complaint, WebTPA, as well as a combination of the other Defendants, was named in a total of 13 putative related actions. [ECF No. 1]. The actions were materially and substantively identical, had overlapping claims, sought to represent the same putative class members, and arose out of the same Data Incident. Joint Decl. ¶ 10. Plaintiffs in the related actions conferred and agreed to move to consolidate the related actions and to appoint Class Counsel as Interim Co-Lead Counsel. Plaintiffs

---

[2] Defendants Hartford Life and Accident Insurance Company, Anthem Blue Cross Life and Health Insurance Company, and Elevance Health, Inc. are business associates of WebTPA that obtained Plaintiffs' and Settlement Class members' Private Information and provided the information to WebTPA.

filed their motion on May 30, 2024. [ECF No. 9]. Thereafter, on June 14, 2024, the Court consolidated the actions into this Action and appointed Jeff Ostrow and Gary Klinger as Interim Co-Lead Class Counsel for the putative classes. [ECF No. 9].

On August 28, 2024, Plaintiffs filed their Consolidated Class Action Complaint, alleging causes of action for Negligence, Negligence Per Se, Breach of Implied Contract, Breach of Third Party Beneficiary Contract, and violations of the California Consumer Privacy Act, Illinois Consumer Fraud and Deceptive Practices Act, Missouri Consumer Protection Law statute, New York General Business Law statute, North Carolina Consumer Protection Law statute, Pennsylvania Unfair Trade Practice and Consumer Protection Law statute, Unjust Enrichment, and Declaratory Judgement. [ECF No. 46].

In anticipation of litigation, Class Counsel prepared written discovery, including interrogatories, document requests, and a comprehensive Fed. R. Civ. P. 30(b)(6) notice. Joint Decl. ¶ 9. Class Counsel also consulted with multiple data experts to understand how the breach occurred, the type of information involved, and whether the information was published on the Dark Web. *Id*.

The Parties then decided to focus their resources on exploring settlement and scheduled a mediation with the Honorable Wayne Andersen (Ret.), an experienced data breach mediator. *Id*. ¶ 15. On September 27, 2024, the Parties filed a Joint Motion to Stay pending the outcome of their mediation. [ECF No. 58]. The Court granted the motion on September 30, 2024. [ECF No. 59].

In advance of the mediation, Plaintiffs propounded informal discovery requests to learn as much as possible in advance of mediation, and WebTPA provided certain information in response to facilitate the mediation. Joint Decl. ¶ 17. The Parties also exchanged mediation briefs outlining their positions with respect to liability, damages, and settlement-related issues. *Id*.

3

The Parties mediated for a full day on January 14, 2025. *Id.* ¶ 18. Although an agreement was not reached that day, the Parties continued negotiating for the next week, and following a mediator's proposal, agreed upon the material terms of a settlement to settle all claims against the Defendants on January 21, 2025. *Id.*

On January 29, 2025, the Parties filed a Notice of Classwide Settlement and Motion to Continue Stay of Deadlines Pending Approval of Class Acton Settlement. [ECF No. 60]. The Court granted the motion on January 30, 2025. [ECF No. 61].

Over several weeks, the Parties diligently drafted, negotiated, and finalized the Settlement Agreement, Notices, and Claim Form, and agreed to the Settlement Administrator. Joint Decl. ¶ 11. The Settlement Agreement was signed on March 19, 2025. *Id.*

## III. SUMMARY OF SETTLEMENT

### A. Settlement Class and California Settlement Subclass

The Settlement Class and its California Settlement Subclass are defined as follows:

Settlement Class: All persons in the United States who were sent notification from Defendants that their Private Information was potentially compromised as a result of the Data Incident.

California Settlement Subclass: Those members of the Settlement Class residing in California on April 18, 2023 – April 23, 2023.

Settlement Agreement ("Agreement"). ¶¶ 19, 64. Excluded from the Settlement Class are all persons who are governing board members of Defendants, governmental entities, the Court, Court's immediate family, and Court staff. *Id.*

### B. Settlement Consideration

The Settlement's $13,750,000.00 all-cash non-reversionary common Settlement Fund will be the total sum paid to settle this Action and will be used to pay: (1) all Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any Service Awards to Class

4

Representatives; and (4) any attorneys' fees and costs awarded to Class Counsel. *Id.* ¶ 72. Settlement Class Members may elect one of two types of Cash Payments and Medical Monitoring. *Id.* ¶ 76d. California Settlement Subclass members may also elect a California Statutory Payment. *Id.* ¶ 76c. Additionally, WebTPA has agreed to valuable injunctive relief in the form of additional security measures. *Id.* ¶ 78.

      1.    ***Cash Payments*** - Settlement Class Members may elect either:

      a.    **Cash Payment A – Documented Losses.** A Claim for a Cash Payment for up to $5,000.00 per Settlement Class Member upon presentment of documented losses related to the Data Incident. To receive a documented loss payment, a Settlement Class Member must elect Cash Payment A – Documented Losses on the Claim Form attesting under penalty of perjury to incurring documenting losses. ¶ 76a. Settlement Class Members will be required to submit reasonable documentation supporting the losses. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by Defendants or otherwise. *Id*. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected and the Settlement Class Member's Claim will be as if they elected Cash Payment B. ¶ 76b.

      b.    **Cash Payment B – Flat Cash Payment.** As an alternative to Cash Payment A, a Settlement Class Member may elect Cash Payment B, which is a flat cash payment in the estimated amount of $100.00 (subject to *pro rata* adjustment based upon total Valid Claims. *Id*.

### c. California Statutory Payment

All Settlement Class members residing in California between April 18, 2023 and April 23, 2023 are California Settlement Subclass members and are entitled to Claim a California Statutory Payment for an additional cash payment estimated in the amount of $50.00. ¶ 76c.

2. *Medical Monitoring* - In addition to electing Cash Payment A or Cash Payment B, and the California Statutory Payment, if applicable, Settlement Class Members may elect two years of CyEx Medical Shield medical monitoring that will provide the following benefits: medical identity monitoring, real-time alerts, and insurance coverage for up to $1,000,000 for medical identity theft. ¶ 76d.  The Medical Monitoring Settlement Class Member Benefit has an estimated value of $90.00 per year per Settlement Class Member. *Id*.

3. *Pro Rata Adjustments on Cash Payments* - Settlement Class Member Cash Payments will be subject to a *pro rata* increase from the Settlement Fund if the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. If the amount of Valid Claims exhausts the Settlement Fund, Cash Payments may be reduced *pro rata* accordingly. *Id.* ¶ 77. To calculate the *pro rata* increase or decrease, the Settlement Administrator must distribute the Settlement Fund first for Medical Monitoring and then for Cash Payments. *Id*. Any *pro rata* adjustment will be on an equal percentage basis.

4. *Business Practice Changes* – WebTPA agrees that it has, and will continue to, undertake reasonable steps to further secure its systems and environments. *Id.* ¶ 78.

5. *Releases* – The Releasing Parties will release the Released Parties for claims relating to the Data Incident. Regardless of whether they submit a Claim, Settlement Class Members who do not opt-out of the Settlement will release all claims, whether known or unknown, against Defendants and the other Released Parties. *Id.* § XIII.

6

6.    *The Notice Program, Claim Process, Opt-Outs, and Objections*

The Parties have agreed to use Kroll Settlement Administration LLC as the Settlement Administrator, who shall administer various aspects of the Settlement under the Parties' supervision. *Id.* ¶¶ 81-82.

*Notice Program* - Defendants will deliver the Class List to the Settlement Administrator within five days of Preliminary Approval. *Id.* ¶ 86. Within 30 days of Preliminary Approval, the Postcard Notice will be sent to Settlement Class members to the last postal address Defendants have on record. *Id.* ¶ 87. The Settlement Administrator will perform reasonable address traces for undeliverable Postcard Notices. *Id.* ¶ 88. The Postcard Notice shall include, *inter alia*: the Settlement's main terms; how to submit a Claim Form; the Claim Form Deadline; the Opt-Out Period to opt-out of the Settlement; the Objection Period to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; Final Approval Hearing date; and Settlement Website address at which Settlement Class members may access the Agreement and other related documents and information. *Id.* ¶ 90. The Postcard Notice will direct Settlement Class members to review the Long Form Notice's opt-out and objection instructions, as well as the Claim filing details. *Id.* ¶ 92.

*Claims Process* - The Claims process is structured to ensure all Settlement Class members have adequate time to review the Settlement terms, compile documents supporting their Claim if Cash Payment A is elected, submit Claims, and decide whether to opt-out or object. Joint Decl. ¶ 28. Claim Forms (mail or online) are due to the Settlement Administrator by the Claim Form Deadline (15 days before the initial scheduled Final Approval Hearing date). Agreement ¶¶ 27, 88, 101. The Claim Form is in plain language for easy completion. Joint Decl. ¶ 29. The Settlement Administrator will review the Claim Forms for completeness and validity. Agreement ¶ 98.

*Opt-outs and Objections* – The opt-out and objection deadlines are 30 days before the original Final Approval Hearing date, *id.* ¶¶ 50, 117, to provide sufficient time to access and review the Settlement documents, including Plaintiffs' Application for Attorneys' Fees, Costs, and Service Awards, which will be filed 45 days before the original Final Approval Hearing date and posted on the Settlement Website. *Id.* ¶ 109. Anyone who opts-out may not object.

### 7. *Service Awards, Attorneys' Fees, and Costs*

*Service Awards* - The Settlement Agreement calls for reasonable Service Awards for the Class Representatives of up to $1,500.00 each, *id.* ¶ 111, meant to compensate them for their efforts on the Settlement Class' behalf, including serving as named Plaintiffs, assisting in the Action's investigation, maintaining contact with Class Counsel, reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's many questions. Joint Decl. ¶ 27.

**Attorneys' Fees and Costs** - After agreeing to the Settlement's material terms, Class Counsel negotiated attorneys' fees and costs as part of the total Settlement Class Member Benefits. Class Counsel intend to seek an attorneys' fees award not to exceed one-third of the Settlement Fund and reimbursement of litigation costs. Agreement ¶ 112. The Notices advise the Settlement Class of these intended requests and further information on how to object. Joint Decl. ¶ 37. The Motion for Final Approval will include the Application for Attorneys' Fees, Costs, and Service Awards prior to the deadlines to opt-out of or object to the Settlement. Agreement ¶ 109.

### 8. *Funds Remaining After Distribution*

The Settlement will exhaust the Settlement Fund. *Id.* ¶ 114. If funds remain from uncashed checks 20 days following the 180-day check negotiation period, all remaining funds shall be distributed to a mutually agreeable *cy pres* recipient to be approved by the Court. *Id.*

## IV.    LEGAL AUTHORITY

Rule 23(e) requires court approval of any class settlement, following notice to the class. The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. 2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992); *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 175 (5th Cir. 1979). The standards at preliminary approval are not as stringent as those applied to a motion for final approval. *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015)*.* "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *Id.* at 314–15.

Plaintiffs here seek preliminary approval of the proposed Settlement—an initial evaluation of the fairness of the proposed Settlement. *See Manual for Complex Litigation* § 30.44 (4th ed.). Judicial and public policy favors the resolution of disputes through settlement. *O'Donnell v. Harris Cnty.*, No. H-16-1414, 2019 WL 422040, at *8 (S.D. Tex. Sept. 5, 2019); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.") (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). There is a strong presumption in favor of finding settlement agreements fair—particularly when they have been reached by experienced counsel, with the assistance of a third-party neutral, after a meaningful exchange of information. *O'Donnell*, 2019 WL 4224040 at *9 (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02-CV-1152-M, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (quoting

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012))). Settlements are not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation"—rather, compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties. *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. Feb. 21, 2007). In granting preliminary approval, the Court determines it will "likely" be able to grant final approval under Fed. R. Civ. P. 23(e)(2) and certify the Settlement Class.

Because the proposed Settlement falls within the range of possible approval, this Court should grant Preliminary Approval and allow Notice to be provided to the Settlement Class. *See* 2 Newberg & Conte, *Newberg on Class Actions* ("*Newberg*") § 11.25 (3d ed. 1992).

## V.    LEGAL DISCUSSION

### A.    The Court Should Certify the Proposed Class for Settlement Purposes.

Under Fed. R. Civ. P. 23(a), a class action may be maintained where the movants demonstrate numerosity, commonality, typicality, and adequacy of representation. Additionally, under Fed. R. Civ. P. 23(b)(3), a class may be maintained where the predominance and superiority elements are met. When evaluating certification of a settlement class, manageability is not a concern because there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Despite the necessarily rigorous analysis of certain prongs at the preliminary approval stage, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis—including the record-breaking settlement in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. 2019). *See also, e.g.*, *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-cv-03424-K, 2022 WL 16821685 (N.D. Tex. 2022), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022);

*Welsh v. Navy Federal Credit Union*, No. 5:16–CV–1062–DAE, 2018 WL 7283639 (S.D. Tex. 2018); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case is no different.

     ***Numerosity.*** Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). A class of 100 to 150 members "is within the range that generally satisfied the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Here, the Settlement Class clearly surpasses that threshold because it includes approximately three million individuals who had their Private Information potentially compromised. Joint Decl. ¶ 36. Judicial economy would be well-served by certification.

     ***Commonality.*** Commonality requires Plaintiffs to show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Every question need not be common, rather the questions linking class members must be substantially related to the resolution of the litigation and capable of generating common answers "apt to drive the resolution of the litigation." *In re Heartland*, 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores v. Dukes,* 564 U.S. 338, 347 (2011)). Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014)). Here, the commonality requirement is met because numerous common issues exist, including: whether Defendants failed to adequately safeguard the Settlement Class' Private Information; whether WebTPA failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of that information; whether WebTPA's data security systems prior to and during the Data Incident complied with applicable data security laws and regulations; and whether Defendants' conduct was negligent. Joint Decl. ¶ 32. These common

11

questions, and others alleged in the Complaint, are central to the causes of action, will generate common answers, and can be addressed classwide. *Id.*

    ***Typicality.*** Rule 23(a)(3) typicality is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Plaintiffs' and Settlement Class members' claims all stem from the Data Incident and the cybersecurity protocols Defendants had (or did not have) in place to protect their Private Information. Joint Decl. ¶ 33. All have Article III standing. *Id. See also Kostka*, 2022 WL 16821685 at *4 (when class action settles at pleading stage, court only considers whether named plaintiffs plausibly alleged minimum Article III standing requirements, as Plaintiffs did in their Complaint). Thus, typicality is satisfied.

    ***Adequacy of Representation.*** Plaintiffs must be able to provide fair and adequate representation. Plaintiffs must establish: (1) there is no antagonism or conflict of interest between the class representatives and other Settlement Class members; and (2) counsel and the Class Representatives are competent, willing, and able to protect the interests of absent class members. *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Here, Plaintiffs' interests are aligned with the Settlement Class as they seek relief for injuries arising out of the same Data Incident to their Private Information. Joint Decl. ¶ 34. The Settlement will make all of them eligible for the same Settlement Class Member Benefits. *Id.* Further, proposed Class Counsel have decades of combined experience as class action litigators, including data breach litigation, and are well suited to advocate for the Settlement Class. See Joint Decl., Exs. 1-2. Moreover, they have put their collective experience to use in negotiating an early-stage settlement guaranteeing immediate

relief.

*Predominance and Superiority.* Rule 23(b)(3) provides class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for failure and efficiently adjudicating the controversy." This inquiry is two-fold. First, "[i]n order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc*., 782 F.2d 468, 472 (5th Cir. 1986). In this case, key predominating questions are whether Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting the Private Information and whether Defendants breached that duty. Joint Decl. ¶ 35. The common questions predominate over any individualized issues, like in other data breach cases. *Id. See also, e.g.*, *In re Heartland*, 851 F. Supp. 2d at 1059 (predominance satisfied in data breach case despite state law variations, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (same); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (same); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (same). Second, the resolution of approximately three million claims in one class action is far superior to litigating individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating so many individual cases arising out of the Data Incident. Joint Decl. ¶ 36.

Thus, with Rule 23(a) and 23(b)(3) satisfied, the Settlement Class should be certified.

## B.     The Settlement Terms are Fair, Adequate, and Reasonable.

At Preliminary Approval, and before Notice is sent, the Court must determine it will

13

"likely" be able to grant Final Approval under the Rule 23(e)(2) factors, deciding whether:

> (A) the class representative and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Before the 2018 Rule 23(e) revisions, the Fifth Circuit developed its own *Reed* factors for whether a settlement is fair, adequate, and reasonable, including: (1) evidence the settlement was obtained by fraud or collusion; (2) complexity, expense, and likely duration of the litigation; (3) stage of the litigation and available discovery; (4) probability of plaintiffs prevailing on the merits; (5) range of possible recovery and certainty of damages; and (6) opinions of class counsel, class representatives, and absent class members. *O'Donnell*, 2019 WL 6219933 at *9 (citing *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).

Because the Rule 23 and *Reed* factors overlap, Fifth Circuit courts often combine them. *Id.* at *9 (citing *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019)); *see also* Fed. R. Civ. P. 23(e)(2), Committee Notes to 2018 amendments ("The goal of this amendment is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate. *Cotton*, 559 F.2d at 1331. A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of

14

reasonableness or appears to be the product of collusion, rather than arms-length negotiation." 2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018). Here, the Court should find it is likely to conclude the Settlement is fair, reasonable, and adequate under both the Rule 23(e)(2) and *Reed* factors and grant Preliminary Approval to allow Notice to issue to the Settlement Class.

### 1. Plaintiffs and Counsel have Adequately Represented the Class. (Fed. R. Civ. P. 23(e)(2)(A)).

As with Rule 23(a) adequacy of representation requirement, plaintiffs must establish that: (1) the there is no antagonism or conflict of interest between the class representatives and other members of the class; and (2) counsel and the class representatives are competent, willing, and able to protect the interests of absent class members. *Feder*, 429 F.3d at 130. Here, the Settlement Class members are all potentially affected by the same Data Incident as the Plaintiffs, and thus the proposed Class Representatives have common interests with the Settlement Class. Moreover, the Plaintiffs have ably represented the Settlement Class, maintaining contact with Class Counsel, reviewing and approving pleadings, assisting in the investigation of the Action, remaining available for consultation throughout mediation, reviewing the Settlement documents, and answering Class Counsel's questions. Joint Decl. ¶ 34.

Proposed Class Counsel have also vigorously pursued the Settlement Class' interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. Joint Decl. ¶ 25. To do so, they leaned on their extensive experience in data breach litigation, their detailed investigation of the Data Incident, and informal discovery exchanged during the course of negotiations. *Id.* As such, Fed. R. Civ. P. 23(e)(2)(A) supports Preliminary Approval.

**2. The Settlement is the product of good-faith arm's-length negotiations and is absent of any collusion. (Fed. R. Civ. P. 23(e)(2)(B)).**

"The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Kostka*, 2022 WL 16821685, at *10 (citing *O'Donnell*, 2019 WL 4224040, at *9). "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011). Here, there is no evidence of fraud or collusion because there was no such fraud or collusion. After a full exchange of information related to liability and damages, the Parties participated in an in-person mediation with the assistance of a respected mediator, the Honorable Wayne Andersen (Ret.), to settle the Action. Joint Decl. ¶ 15. Thereafter, the Parties spent weeks negotiating, drafting, and finalizing the finer points of the Settlement in the Agreement. *Id.* ¶ 20. Moreover, the proposed Settlement does not favor any Settlement Class member over any other, weighing against any evidence of fraud or collusion and favoring approval. See *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007). Accordingly, the presumption of reasonableness should apply here, and both Fed. R. Civ. P. 23(e)(2)(B) and the first *Reed* factor are satisfied.

**3. The Settlement Agreement provides substantial relief to the Settlement Class, in light of the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C)).**

The third and most important Rule 23(e)(2)(c) factor weighs heavily in favor of granting Preliminary Approval and overlaps with the second, fourth, and fifth *Reed* factors (complexity, length, and expense of litigating; probability of prevailing on the merits; and range of possible recovery and certainty of damages). The Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Data Incident. First, all

16

Settlement Class Members may select two years of Medical Monitoring valued at $90.00 per person, per year providing medical identity protection, real-time alerts, and insurance coverage for up to $1,000,000 for medical identity theft. Agreement ¶ 76d; Joint Decl. ¶ 26. Second, they may Claim Cash Payment A (up to $5,000.00 for documented losses, subject to *pro rata* adjustment) or Cash Payment B (estimated $100.00 flat cash payment, subject to *pro rata* adjustment). Agreement ¶ 76b. Lastly, California Settlement Subclass members may elect an additional estimated $50.00 cash payment, subject to *pro rata* adjustment. *Id.* ¶ 76c. These benefits are consistent with and in fact exceed other approved settlements.  Joint Decl. ¶ 26.

Although Plaintiffs are confident in the merits of their claims, the litigation risks cannot be disregarded. Besides the potential that either side will lose at trial, Plaintiffs anticipate substantial additional costs if litigation continues, including experts. Joint Decl. ¶ 43. Plaintiffs would need to defeat a motion to dismiss, counter a later motion for summary judgement, and both gain and maintain certification of the Settlement Class, with a near inevitable interlocutory appeal attempt. *Id.* As at least one court has found, because the "legal issues involved [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

Moreover, as the Motion for Final Approval will detail, the one-third of the common Settlement Fund for attorneys' fees is regularly granted in the Fifth Circuit. *See, e.g., Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-CV-03424-K, 2023 WL 3914266 (N.D. Tex. June 6, 2023); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *10 (N.D. Tex. Apr. 25, 2018).

The Settlement's value is guaranteed in the face of uncertainty in prevailing on the merits.

While Plaintiffs strongly believe in the merits, they also understand that Defendants will assert a number of potentially case-dispositive defenses. In fact, if litigation continues, Plaintiffs would likely have to immediately survive a motion to dismiss. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g., Logan v. Marker Group, Inc.*, 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim). Class certification is another hurdle. *See, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in a data breach case).

Plaintiffs dispute the Defendants' defenses, but obviously success at class certification and trial is far from certain. Through the Settlement, Plaintiffs and Settlement Class members gain significant benefits without risking not receiving any relief at all if the case continues.

### 4. The proposed Settlement treats Settlement Class Members equitably. (Fed. R. Civ. P. 23(e)(2)(D)).

Here, the Settlement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class members are eligible to make a Claim for a Cash Payment and Medical Monitoring, subject to proper claim completion and validation by the Settlement Administrator.  Accordingly, this factor also weighs in favor of preliminary approval.

### 5. The remaining "Reed" Factors also weigh in favor of Preliminary Approval.

The remaining *Reed* factors also support Preliminary Approval and the Court's conclusion that it is likely to grant Final Approval. As to the third factor (stage of the litigation and available discovery), the Settlement was reached only after extensive investigation by the Parties and an informal exchange of information such that Class Counsel could fully understand the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. Where Parties possess ample information with which to evaluate the merits of competing positions, a lack of formal discovery

18

will not prevent preliminary approval of a settlement. *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *Cotton,* 559 F.2d at 1331.

As to the sixth factor (opinions of class counsel, class representatives, and absent class members), it is most appropriately examined after the Settlement Class has been issued Notice and absent Settlement Class members have a chance to respond, but there is no reason to believe there will be antagonism to the Settlement. Plaintiffs approve of its terms, as do proposed Class Counsel, based on their deep experience litigating data breach and other class actions. The Settlement's valuable relief to Settlement Class Members makes it fair, reasonable, adequate, and worthy of Preliminary Approval. Joint Decl. ¶ 40.

Thus, these additional *Reed* factors weigh in favor of approving the proposed Settlement. Accordingly, the Court should grant Preliminary Approval.

### C.    The Proposed Settlement Administrator will Provide Adequate Notice.

Rule 23(e)(1) requires "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For a Rule 23(b)(3) class, notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The proposed Notice Program is designed to satisfy Rule 23(c)(2)(B) and the *Manual for Complex Litigation*. *See* Agreement, Exs. 1–2. Direct and individual Notice by first-class mail to each Settlement Class member will occur. *Id.* ¶ 92. If a Postcard Notice is undeliverable, the Settlement Administrator will research a better address and re-send Notice. *Id.* ¶ 94. The Long

Form Notice will also be available to Settlement Class members on the Settlement Website, along with all relevant filings. *Id.* ¶ 42. The Settlement Administrator will maintain a toll-free telephone number by which Settlement Class members can seek answers to frequently asked questions or request a Long Form Notice or Claim Form be mailed. *Id.* ¶ 83e. A post office box will be maintained to receive Claim Forms, opt-out requests, and objections. *Id.* ¶ 83c.

The Notices are clear and straightforward, defining the Settlement Class and the Settlement's essential terms; clearly describing the options available to the Settlement Class and the deadlines for taking action; disclosing the requested Service Awards for the Class Representatives and the attorneys' fee amount Class Counsel intends to seek and that litigation costs will be sought; explaining the opt-out, objection, and Claim procedures and deadlines; stating the Final Approval Hearing date, time, and location; and prominently displaying Class Counsel's contact information. Agreement, Exs. 1–2.

The proposed direct Postcard Notice is the gold standard and is consistent with notice programs approved in this Circuit. *See*, *e.g.*, *Burnett v. CallCore Media, Inc.*, No. 4:21-cv-03176, 2024 WL 3166453, at *3 (S.D. Tex. June 25, 2024) (approving notice plan with postcard notice). Accordingly, the Notice Program should be approved.

## VI.    PROPOSED SCHEDULE OF EVENTS AND CONCLUSION

The Court should also set the Final Approval Hearing date and time. Deadlines in the Final Approval process, including the opt-out and objection deadlines, will be determined based on the original Final Approval Hearing date. Plaintiffs propose the following schedule:

| | |
|---|---|
| **Notice Program Begins** | 30 days after Preliminary Approval |
| **Deadline to file Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service** | 45 days before the initial scheduled Final Approval Hearing date |

| | |
|---|---|
| **Awards** | |
| **Opt-Out Deadline** | 30 days before the initial scheduled Final Approval Hearing date |
| **Objection Deadline** | 30 days before the initial scheduled Final Approval Hearing date |
| **Deadline to Respond to Objections** | 15 days before the initial scheduled Final Approval Hearing date |
| **Deadline to Submit Claim Forms** | 15 days before the initial scheduled Final Approval Hearing date |
| **Final Approval Hearing** | _____ __, 2025, at ____ am/pm. (Preferably the week of _____, **2025,** or soon thereafter) |

Plaintiffs and Class Counsel respectfully request the Court: (1) grant Preliminary Approval; (2) certify for settlement purposes the Settlement Class, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and (e); (3) approve the Notice Program and the form of the Notices; (4) approve the Claim Form and Claim Process; (5) approve the Notice Program's opt-out and objection procedures; (6) appoint the Plaintiffs who signed the Settlement Agreement as Class Representatives; (7) appoint as Class Counsel Jeff Ostrow and Gary Klinger; (8) appoint Kroll Settlement Administration, LLC as the Settlement Administrator; (9) continue to stay the Action pending Final Approval; (10) enjoin and bar all members of the Settlement Class from continuing in any litigation or asserting any claims against Defendants and the other Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision to grant Final Approval of the Settlement; and (11) schedule a Final Approval Hearing.

A proposed Preliminary Approval Order is attached as ***Exhibit C***.

Dated: March 19, 2025.                     Respectfully submitted,

/s/ Jeff Ostrow
Jeff Ostrow (pro hac vice)                 Joe Kendall, Texas Bar No. 11260700
**KOPELOWITZ OSTROW P.A.**                 **KENDALL LAW GROUP, PLLC**
1 West Las Olas Blvd., Ste. 500            3811 Turtle Creek Blvd., Ste. 1450
Fort Lauderdale, FL 33301                  Dallas, TX 75219
954-332-4200                               214-744-3000
ostrow@kolawyers.com                       jkendall@kendalllawgroup.com

Gary Klinger (pro hac vice)
**MILBERG COLEMAN BRYSON**
**GROSSMAN PHILLIPS PLLC**
227 W. Monroe Street, Ste. 2100
Chicago, Illinois
866-252-0878
gklinger@milberg.com

*Attorneys for Plaintiffs and the Proposed Settlement Class*

## CERTIFICATE OF CONFERENCE

I hereby certify Plaintiffs and Defendants conferred regarding the relief requested, and this motion is unopposed.

/s/ Jeff Ostrow
Jeff Ostrow

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion was served on all counsel of record on March 19, 2025, via CM/ECF, in accordance with LR5.3 and Fed. R. Civ. P. 5(b).

/s/ Jeff Ostrow
Jeff Ostrow